## 1858.

---

## COUNTY OF PENOBSCOT.

---

THEOPHILUS CUSHING & al. *versus* MATHIAS E. RICE & al.

If an agent makes a purchase of a quantity of lumber for his principal, without disclosing his agency, taking a bill of sale to himself, and paying therefor according to the bill, if the lumber falls short in quantity on delivery, the principal may recover back the excess of payment by an action in his own name.

In such an action, evidence that the purchase was for the principal, is admissible, notwithstanding the agent took the bill of sale to himself, and then gave another bill of sale of the same lumber from himself to his principal.

Evidence is also admissible that the vendors warranted the lumber, in quantity and quality, though the bill of sale contains no such warranty.

Evidence of false and fraudulent representations is also admissible, though contradictory to the bill of sale.

In an action to recover back a part of the consideration paid for a quantity of lumber, on the ground that it fell short of the quantity agreed to be delivered, it is not necessary for the plaintiff, first to offer to rescind the contract, or to restore that which has been delivered.

EXCEPTIONS from the rulings of CUTTING, J., and motion for a new trial.

46  303
61  422
64  194
76  554

This was an action of ASSUMPSIT for money had and received. The plaintiffs claimed to recover back money paid to

the defendants, on the ground that certain lumber purchased by them was inferior in quality, and less in quantity, than the defendants contracted to deliver.

It appeared in evidence, that Bragg & Moor, in May, 1854, bought of the defendants a quantity of lumber, taking a bill thereof, of which the following is a copy.

"Bragg & Moor bought of Haynes & Rice, to be delivered at North Twin Dam, —

| | | |
|---|---|---|
| 7,698 spruce logs, containing | 927,161 feet, | |
| 9,337 spruce and Norway pine logs, | 1,389,765 feet, | $21,000 00 |
| 639 timber and old pine butts, | 154,972 feet, | |
| Interest, commission, &c., | | 640 00 |
| Scaled by M. Webster, | | $21,640 00 |

"Settled and received payment by drafts on Cushing & Co., Frankfort.                                    Haynes & Rice."

"July 1, 1854."

Bragg & Moor, on the same day, gave Cushing & Co. a bill of sale of the same lumber, taking their acceptances for the price, which they indorsed to the respondents in payment.

The plaintiffs offered testimony to prove that Bragg & Moor bought the lumber of the defendants as the agent of the plaintiffs. This testimony was objected to on the ground that it was contradictory to the written bills of sale; but it was admitted by the Court.

The plaintiffs also offered testimony to prove that the defendants falsely and fraudulently represented to Bragg & Moor that the lumber corresponded in quantity and quality with Webster's scale bills, and the bill of sale; and that it fell short in quantity on delivery. This testimony was objected to by the defendants, but admitted.

It was contended on the motion for a new trial that the verdict for the plaintiffs was against law, and against the evidence. There was no evidence that the plaintiffs had offered to rescind the contract, or to return the lumber or any part thereof.

The case was argued by *A. Sanborn*, for the defendants.

1. The bill of sale given by the defendants was to Bragg & Moor, and was a written contract. Parol evidence was therefore inadmissible to show that the contract was really with the plaintiffs, through Bragg & Moor, as their agents.

2. The bill of sale contained no warranty. Parol testimony was therefore not admissible to prove that the sale was with a warranty. Parsons on Contracts, 472; *Van Ostend* v. *Reed*, 1 Wend. 424; *Wilson* v. *Marsh*, 1 Johns. 503; *Reed* v. *Wood*, 9 Verm. 285; *Lamb* v. *Crafts*, 12 Met. 353; *Dean* v. *Mason*, 4 Conn. 432; *Randall* v. *Rhodes*, 1 Curtis, 90.

There was no offer to return the property or to rescind the contract, before commencing this suit. The action, therefore, cannot be maintained. Chitty on Contracts, 276; 1 Parsons Con. 475, (491,) and cases there cited; 2 Parsons Con. 276, and notes, s, t, u, v.

*Ingersoll* argued for plaintiffs.

It is a well established rule of law, that, in parol contracts, an agent may contract in his own name for the benefit of his principal, and that the principal may maintain an action in his own name to enforce it.

Story on Agency, § 61, says, "A few cases may be sufficient in this place, (as the subject will necessarily occur in other connections hereafter,) to illustrate not only the exceptions to the general rule, as to sealed instruments, but also the more liberal doctrine applicable to unsealed instruments. Thus, for example, upon a written contract made by a factor in his own name, for the purchase or sale of goods for his principal, he may sue and be sued thereon, exactly as if he were named in it; for it is treated as the contract of the principal, as well as that of the agent. So, if an agent should procure a policy of insurance in his own name, for the benefit of his principal, the agent, as well as the principal, may sue thereon; for it is treated properly as a contract, to which the principal, as well as the agent, is a party. So, if a master of a ship, by a written contract in his own name, should contract for or order

repairs, the owner may be sued therefor, as well as the master; and the contract will be treated as the several contract of each. So, a bottomry bond, properly entered into by the master of a ship, in his own name, will bind the owner; and a charter party made by the master, in his own name, or a bill of lading signed in his own name, in the usual course of employment of the ship, will bind the owner."

And in § 60, it is said, " the doctrine maintained in the more recent authorities is of a far more comprehensive extent. It is, that if an agent possesses due authority to make a written contract, not under seal, and he makes it in his own name, whether he describes himself to be an agent, or not, whether the principal be known or unknown, he, the agent, will be liable to be sued, and entitled to sue thereon, in all cases, unless, from the attendant circumstances, exclusive credit is given to the agent."

Formerly, in contracts under seal, and even now, as a general rule, an agent must make use of his principal's name, in order to bind him. It must be the deed of the principal, and not of the agent; but, in all *parol* contracts by an agent, he may or may not disclose his principal, and still bind him. The necessities of trade and commerce have required a more liberal doctrine than was allowed under sealed instruments.

The question, stated in the strongest terms against the plaintiff, *is*, that parol evidence was received, to prove an agency in purchasing the logs, without disclosing the principals.

The exceptions allege that plaintiffs offered "*testimony*" to prove that Bragg & Moor bought the said lumber of defendants, for plaintiffs, acting as their agents. Where an agent contracts in his own name, he binds himself, as well as his principal; and Story, in § 270, says, " there is no doubt that parol evidence is admissible, in behalf of one of the contracting parties, to show that the other was an agent only in the sale, though contracting in his own name, to fix the principal."

In a note to section 270 of Story on Agency, the law upon this point is fully discussed, and several English cases are cit-

ed.   In *Higgins* v. *Senior*, 8 Mees. & Wels. 440, Mr. Baron
PARKE, in delivering the opinion of the Court, said, "there is
no doubt that it is competent to show that one or both of the
contracting parties were agents for other persons, and acted
as such agents in making the contracts, so as to give the ben-
efit of the contract, on the one hand to, and charge with lia-
bility, on the other, the unnamed principals; and this, wheth-
er the agreement be, or be not required to be in writing, by
the statute of frauds."

In another case, cited in said note, *Sims* v. *Bond*, 5 Barn.
& Adol. 393, the Lord Chief Justice, in delivering judgment,
said, "it is a well established rule of law that where a con-
tract, not under seal, is made by an agent in his own name,
for an undisclosed principal, either the agent or the principal
may sue on it.   This rule is most frequently acted on in sales
by factors, agents, or partners, in which cases either the nomi-
nal or the real contractor may sue."

It is further stated in this note, on the authority of several
English cases, that "the true rule is, that parol evidence is
admissible for the purpose of introducing a new party, but
never for that of discharging an apparent party to the con-
tract."

According to this doctrine, which appears to be established
by a large number of authorities cited by Story, it would fol-
low that it is competent for plaintiffs or defendants to prove
the agency of Bragg & Moore, by parol, in an action against
each other; while it would not be competent for Bragg &
Moor to prove such agency in a suit against themselves, on
this contract of sale, by either plaintiffs or defendants.

In a suit by these defendants against Bragg & Moor, for
the consideration money of the contract, they could not prove,
in defence, that they were only agents, and not liable because
they disclosed their principals; because the contract of sale
showed them to be principals, and such evidence would vary
or alter the written contract.   But the defendants could, in
an action for the same, against these plaintiffs, prove Bragg &
Moor agents, for the purpose of introducing a new party;

and, for such cause of action, the defendants would have a remedy against either Bragg & Moor or plaintiffs. And, for the same reason, the plaintiffs may have their remedy against these defendants.

If the bills of sale from Rice & Haynes to Bragg & Moor, and from Bragg & Moor to Cushing & Co., show they acted as principals, by the authorities cited, parol evidence may be here introduced, to prove the agency and introduce another party to the contract. Cushing & Co. have a remedy on these defendants as well as Bragg & Moor.

This rule of law is now well established in the English courts, by the decisions above alluded to, and by Judge Story, in the notes to his Commentary on Agency, and who gives them his full approval and sanction as the law of this country. By the decisons in Massachusetts and New York, there is an apparent conflict with this law of agency, though the decisions on the subject were long ago made, and upon contracts excepted from the operation of it in the English courts, to wit, promissory notes and bills of exchange.

In the *New England Marine Ins. Co.* v. *DeWolf,* 8 Pick. 56, the Court say, that the rule "that an agent, or attorney, to bind his principal, must sign the name of the principal, applies only to deeds, and not to simple contracts." The same principle was decided by this Court, in *Andrews* v. *Estes & als.,* 2 Fairf. 267.

The principle contended for in this case appears to have been adopted by this Court, in *Upton & al.* v. *Gray,* 2 Greenl. 373, and also in *Williams & al.* v. *Mitchell,* 17 Mass. 98. And the same reasons are given for their conclusions in these cases, as are given in the English cases cited by Story, viz., — that the admission of evidence to introduce a new party to a parol contract, made by an agent, rests upon the same principles and necessities as of *dormant* partners. The Court, in *Williams & al.* v. *Mitchell,* say that the case is somewhat analogous to dormant partners, but much stronger, and the case of *Upton* v. *Gray* is decided on the authority of *Williams* v. *Mitchell,* and approves it, and the reasonings.

The opinion of the Court was delivered by

CUTTING, J.—In this case, the exceptions disclose no ob-jection to the *form* of the action, or to the instructions of the presiding Judge; but only that certain testimony was illegally admitted.

The action is brought to recover back money paid to the defendants for certain logs, which, although embraced in a bill of sale, the plaintiffs say they have never received. It appears from the bill of sale, dated May, 1854, *that* "Bragg & Moor bought of Haynes & Rice" (the defendants) a certain specified number of logs and feet, "to be delivered at North Twin Dam." And it further appears, from another bill of sale of same date, that "Messrs. Cushing & Co. (the plaintiffs) bought of Bragg & Moor, at North Twin Dam," the same lumber, since both bills contain the same number of logs, quantity and marks. The plaintiffs then further offered parol testimony, tending to show that the lumber was purchased of the defendants by Bragg & Moor, while acting as their agents, which was ruled to be admissible, against the defendants' objection.

In 1 Am. Lead. Ca. 643, where many authorities on this point are collected, it is held that, "In case of a purchase or exchange of goods, by an agent, even if the principal be not disclosed, or the bill of sale be made to the agent himself, the property, immediately upon the execution of the contract, vests in the principal; and the right of action upon an im-plied warranty, or on fraudulent representations made to the agent, is in the principal; for the damages, which ground the action, follow the property." In addition to the authorities referred to on this point by plaintiffs' counsel, *vide Eastern Railroad Co.* v. *Benedict,* 5 Gray, 561, and the cases there cited.

Exception, in the second place, is taken to the admission of testimony as to false and fraudulent representations made by the defendants to Bragg & Moore, as irrelevant, and because it explained or contradicted the bills of sale. If Bragg &

Moor were acting as the agents of the plaintiffs, any representations made to them would be as material as though they were made to the principals. And whether such representations were introduced for the purpose of explaining or contradicting the bill of sale, it does not appear; however that might be, a party to a contract obtained by his fraud, can never shut out such testimony and shield himself under such a pretence. It is not the case, where a bill of sale made in good faith excludes parol evidence of warranty, as in *Lamb* v. *Crafts*, 12 Metc. 353. *Randall* v. *Rhodes*, 1 Curtis, 90, and other cases cited by defendants' counsel.

Again, it is contended that this action cannot be maintained, because, prior to its commencement, there was no offer on the part of the plaintiffs to rescind the contract or to restore the lumber to the defendants. It appears, from the first bill of sale, that the defendants received payment for the lumber by drafts on the plaintiffs, and this action is not brought to recover back the whole consideration, but only a part proportional to the logs not "delivered at North Twin Dam." It is founded on a failure of consideration in part only; it seeks to recover only the contract price paid for as many logs as were not so delivered. Whether the jury found that there had been fraudulent representations in making the sale, or otherwise, the case nowhere discloses, or upon what grounds the verdict was returned. The words, "to be delivered at North Twin Dam," create an obligation executory on the part of the defendants, to deliver the quantity of lumber mentioned in the bill of sale at that place, and if not all delivered, such circumstance did not prevent the plaintiffs from receiving what was delivered. The plaintiffs do not seek to rescind the contract, but to enforce it, and the authorities, therefore, cited by the excepting counsel on this point, have no very material application.

We perceive, from an examination of all the evidence reported to sustain the motion, that it was somewhat conflicting, and came appropriately within the province of the jury

to weigh and consider, and we cannot discover any sufficient reason to disturb the verdict; consequently the

*Exceptions and motion are overruled.*

TENNEY, C. J., and RICE, HATHAWAY, APPLETON, and GOOD-ENOW, J. J., concurred.